## Case No. 17,058.

### WALDRON et al. v. CHASTENEY.

[2 Blatchf. 62.] [1]

Circuit Court, S. D. New York. Nov. 16, 1847.

POWERS UNDER WILL—POWER OF SALE—LEASE—DOWER—EQUITY JURISDICTION—EXECUTION OF POWER.

1. E. made his will in 1819, devising real estate to R. his wife, for life, or during her widowhood, for the support of herself, her three daughters, and one P.; and, on the death or re-marriage

1 [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

of R., the estate was devised to P. for his life, for the support of himself and the daughters; and, after the death or re-marriage of R. and the death of P., the estate was devised to the three daughters in fee. The will gave power to R., so long as she should remain single, and to P. after her death or marriage, to sell and convey the real estate, provided that B. should in writing, signed with his hand, approve and consent to such sale, without which approbation and consent no such sale should be valid. The moneys arising from the sale were directed to be invested in such manner as B. should direct, for the purposes of the will. R. was appointed executrix: Held, that R. had only a naked power in respect to the disposition of the estate, and that the power could be rightfully exercised only by a sale of the estate in fee.

2. The testator having died, and the will having been proved, R., in 1825, leased the real estate, as executrix and trustee, to N., setting forth the will at large in the lease, for 21 years, the lessee to pay to R., her heirs and assigns, yearly during the term, if she should so long live and remain the widow of E., and, after her death or marriage, during the residue of the term then unexpired, unto P., a certain rent: Held, that the lease, as a conveyance under the power of sale in the will, was void, as not fulfilling the intent of the testator, and not a sale of the estate for cash, or something which could be invested as its representative.

3. R., having an absolute estate for her widowhood, could lease that, independently of the power of sale, and that the lease given was good for the interest she had, and only void for any surplus of the term unexpired at her decease.

4. R. having, in 1827, sold and conveyed the same real estate in fee to H., the conveyance purporting to be made by her as executrix and trustee under the will and in pursuance of the power of sale: Held, that the lease to N. was no impediment to the exercise of the power of sale.

5. In ejectment brought by the remainder-men under the will, to recover the real estate, after the death of R. and P.: Held, that questions touching the discreet exercise of the power of sale belonged to a court of equity, and that the deed to H., if valid on its face, must operate as such at law.

6. The approbation and consent of B. to the deed to H. were given by his writing at the foot of the deed, and directly following the signature of R.: "I consent to the above," and subscribing his name thereto: Held, that the requirement of the proviso in the power of sale was thereby satisfied, and that the consent of B. imported his approbation.

Ejectment [by Benjamin Waldron and Sally Ann, his wife, and John L. Wilson, against Edward Chasteney] for premises in the city of New York. Medcef Eden, the younger, made his will in July, 1819, devising all his real and personal estate to Rachel his wife, for life, or durante viduitate, for the maintenance and support of herself, her daughters Sally Ann, (one of the plaintiffs,) Elizabeth, and Rebecca, and also of John Pelletreau: and, on the death or re-marriage of his wife, he devised said estates to Pelletreau, during his natural life, for the support of himself and the three daughters; and, after the death or re-marriage of his wife, and the death of Pelletreau, he devised all his said landed estates to Sally Ann, Elizabeth and Rebecca, in fee. The will then proceeded: "I give to my wife, so long as she shall remain single, and to the said John Pelletreau, after her death or marriage, full power and authority

to sell and convey all or any part of my real estate, provided that the said Aaron Burr shall in writing, signed with his hand, approve and consent to such sale; but no such sale shall be valid without such approbation and consent." The moneys arising from such sale were directed to be invested in such manner as Burr should direct, for the purposes of the will. He appointed his wife executrix so long as she remained single and unmarried, and declared that, after she should die or be married, Pelletreau should be his executor. On the 1st of January, 1825, the testator having died, and his will having been duly proved, Rachel Eden executed a lease of the premises in question, which were a part of those devised by the will of her husband, to one Norsworthy. The lease purported to be executed by her as executrix and trustee, and set forth the will at large. The habendum clause of the lease was: "To have and to hold the premises, from the 1st day of January, 1825, for and during the full end and term of twenty-one years thence next ensuing, yielding and paying to the said Rachel Eden, her heirs and assigns, yearly and every year during the said term of twenty-one years, if she shall so long live and remain the widow of the said Medcef Eden, and, from and after her death or marriage, yielding and paying, for and during the residue of the said term which may be then unexpired, unto the said John Pelletreau, the yearly rent," &c. On the 29th of January, 1827, Rachel Eden sold and conveyed the same premises in fee to Halsey Rogers. The conveyance purported to be made by her as executrix and trustee under the will, and in pursuance of the power of sale contained therein. The approbation and consent of Burr to this sale was given by his writing, at the foot of the deed, and directly following the signature of Rachel: "I consent to the above," and subscribing his name thereto. Rachel Eden died in 1830, and Pelletreau in 1833. Elizabeth died in 1832, intestate and without issue. The plaintiff Waldron was the husband of the plaintiff Sally Ann. The plaintiff Wilson represented the interest of Rebecca. The defendant set up the lease to Norsworthy, and the deed to Halsey. At the trial a verdict was taken subject to the opinion of the court, on a case to be made.

Ambrose L. Jordan, for plaintiffs.
George Wood and Daniel Lord, for defendant.

Before NELSON, Circuit Justice, and BETTS, District Judge.

BETTS, District Judge. The points considered and decided by the court are: (1) The due execution of the power under the will, in the conveyance of the premises in question in fee to Halsey Rogers, on the 29th of January, 1827; (2) The sufficiency of the endorsement made by Col. Burr on the deed to Rogers, as a compliance with the directions of the will.

1. We regard it as settled, by the courts of this state, on the effect of the will of Medcef Eden, that Rachel Eden had only a naked power in respect to the disposition of the estate, and that the power could be rightfully exercised only by a sale of the estate in fee. Waldron v. McComb, 1 Hill, 111; McComb v. Waldron, 7 Hill, 335; Bloomer v. Waldron, 3 Hill, 361. If the demise to Norsworthy, on the 1st of January, 1825, was intended as a conveyance under the power in the will, it would be void, as not fulfilling the declared intent of the testator, because not a sale of the estate for cash, or something which could be invested as its representative. Bloomer v. Waldron, 3 Hill, 361. But Rachel Eden, having an absolute estate for her widowhood, could lease that, independently of the power of sale; and, whether she demised it in gross by a description appropriate to her special interest, or conveyed it for a term of years which might outrun the duration of her interest, the demise would be good for the interest she had, and only void for any surplus of the term unexpired at her decease. Bac. Abr., "Leases," I, 2; 4 Com. Dig. (Day's Ed.) 63, notes; Sinclair v. Jackson, 8 Cow. 543; Clarke's Lessee v. Courtney, 5 Pet. [30 U. S.] 319. The lease purports to be executed by her, as executrix and trustee, but it also sets forth at large the will by which her personal interest is created, and the conveyance will, upon settled principles of law, be supported to the extent of her authority to make it as donee of the estate. Sugd. Powers, 298. She being tenant for life, unless she should re-marry, the demise was good for the amount of her interest, and she would never have been allowed to reclaim the premises from the lessee during her life, or before the expiration of the twenty-one years, on the allegation that she had no rightful power, as executrix and trustee, to execute a lease, even though it had been executed by her with a formal declaration that she acted solely under the power of sale in the will. But the lease, though inartificially drawn, in no way limits the grant to the power of sale. On the contrary, it indicates, with a distinctness that can leave no doubt, an intention to grant the interest of the lessor, as well as to exercise a supposed power to convey a term beyond that. There was clearly nothing in the power of sale in the will which authorized the limitations as to rent contained in the lease, and, as those limitations are in consonance with the actual interest of Rachel Eden and Pelletreau, the instrument would naturally be construed so that the grantee might be assured of all the interest the widow had in her own right, and so as to correspond with honest and fair dealing on her part. These considerations show that the lease, operating only to convey the vested interest of the lessor during her widowhood, created no impediment to the exercise of her power of sale; and that the sale in fee, on the 29th of January, 1827, to Rogers, became valid and effectual, if so executed in point of form as to give it operation under the will.

It is contended that the outstanding term of years granted by the trustee to Norsworthy was injurious to the devisees, in preventing a sale for the full value of their interests, and also that the sale to Rogers was in fact for an inadequate consideration. Questions touching the discreet and beneficial exercise of the power of sale belong to a court of chancery, and not to one of law. The devisees might, by bill, have had relief against the trustee, if she executed her trust improvidently and to their prejudice, and against the purchaser, also, if he knowingly induced such act and colluded with her in its commission. Franchot v. Leach, 5 Cow. 506; Champion v. White, Id. 510; Jackson v. Hills, 8 Cow. 290, 293; Taylor v. King, 6 Munf. 358. But, upon its face, the conveyance to Rogers is valid, in so far as Mrs. Eden's capacity to execute it is concerned, and must so operate at law against the remainder-men, unless its execution was defective for want of compliance in form with the directions of the will.

2. The power to sell is given by the will, with a proviso, "that Aaron Burr shall, in writing, signed with his hand, approve and consent to such sale, but no sale shall be valid without such approbation and consent." The argument for the defendant concedes, as broadly as the plaintiffs contend, that this power must be strictly pursued, so far as it is directory as to persons, time and mode of execution. It is needless to rehearse the authorities for this doctrine, which is fundamental on this point. There can be no question that the deed by the trustee was inoperative and void, unless Aaron Burr, in writing, signed with his hand, approved and consented to the sale. His consent and approbation in writing was made a vital part of the power. No form or method of conveyance could be devised omitting such consent, which would satisfy the special qualification of the power. No consent or approbation could be given by Col. Burr which would render the deed efficacious, except in the specific mode pointed out by the will. Sugd. Powers, 264; Hawkins v. Kemp, 3 East, 410; Taylor v. Horde, 1 Burrows, 60, 120; Daly v. James, 8 Wheat. [21 U. S.] 495; Clarke's Lessee v. Courtney, 5 Pet. [30 U. S.] 319, 349, 350; Sinclair v. Jackson, 8 Cow. 543. It is, perhaps, not going too far to say, that the cases at law demand a precise and literal exercise of the power, to satisfy the rule. Daly v. James, 8 Wheat. [21 U. S.] 495, 535; Hawkins v. Kemp, 3 East, 410; Sugd. Powers, 210, 212.

Whenever a particular form is prescribed, no other may be adopted as equivalent to it, and the only question here is, whether the will has declared the formula with which the consent and approbation of Col. Burr shall be expressed. The manner must be in writing, and the writing must be signed by him. Both of these particulars have been fulfilled in this case, and we think that these are the only directions in the will which need be literally and exactly complied with. The conveyance is perfect in all its formalities when so framed, and, if the writing, so signed, expresses the consent and approbation of Col. Burr to the sale, there is no limitation to the use of those precise words in order to convey the consent. The will manifestly shows that the testator intended to secure the concurrence of Col. Burr to the conveyance and the investment of the proceeds, and it defines the manner in which his concurrence shall be communicated. This, however, does not necessarily import that the consent and approbation itself—the assent of Col. Burr's mind—must be shown by the employment of those very expressions. Otherwise, any departure from those identical words would vacate the deed, although the consent and approbation of Col. Burr were expressed with a fullness and certainty beyond all question. Suppose Col. Burr had written and subscribed a declaration on the deed, that he well knew its terms and purpose and had advised the sale, and that it met his fullest concurrence, and was in all respects satisfactory to him—could any court deny that this was consent and approbation on his part? We are satisfied that no more is requisite on this point, than for the grantee to show that the writing signed by Col. Burr does give his consent and approbation to the sale, and that the omission to employ that precise phraseology is not decisive of the inquiry.

At the foot of the deed, and directly following the signature of the trustee, Col. Burr wrote: "I consent to the above," and subscribed his name to it. We think that "consent" in this connection involves "approbation" also, even if the two expressions are not of equal and common value. Indeed, if any distinction can be made in the import and force of the words, it would appear that the testator used "consent" as the most significant and effective. If, as the supreme court intimate in Clarke's Lessee v. Courtney, 5 Pet. [30 U. S.] 319, 350, overniceties and refinements are not to be disregarded in construing powers to sell and convey lands, certainly no more extreme rigor of construction will be applied to defeat a bona fide attempt to execute a power, than to uphold it. In both cases, the intention of the party creating the power is to control its construction, and the substantial fulfilment of that intention is all that will be required. Wilson v. Troup, 7 Johns. Ch. 25, 33; Pomery v. Partington, 3 Term R. 665; Griffith v. Harrison, 4 Term R. 737, 743, 748, 749. In view of these principles, whatever stress of interpretation is applied to "approve," no sound and satisfactory distinction can be stated carrying its meaning beyond that of "consent." Especially, as the words are used in the will—"approve and consent to such sale"—"consent to" is grammatically, if not intrinsically, the positive and operative phrase. For, "approve" can have no sense, as it is placed in the clause, without the transposition of "such sale" or of "approve" itself, so as to bring the three words in direct connection. As it stands, and literally construed, "approve" is valueless, having no grammatical connection with "sale." Al-

though the court, in effectuating the intent of the testator, and looking to the substance of the power, would certainly not suffer a fault in syntax to work its destruction, yet, upon a nice point of synonymy or tautology, the criticism made may not be without influence in indicating whether the intent and direction of the testator are not wholly conveyed by the word "consent." Aside from such hypercriticism, we think that the written "consent" of Col. Burr to the sale necessarily imports his "approbation," and that the requirements of the power are thereby satisfied. We do not perceive that any further significance would be afforded by using both words. No import or effect is pointed out as legally applicable to both terms, which "consent," as employed, does not of itself express. We are to assume that the trustee and Col. Burr acted in good faith towards the grantee, and intended that the deed should be executed conformably to the power, and the "consent" of Col. Burr to the sale and conveyance for that purpose must be regarded as involving his "approbation" of both. Judgment for defendant.