THOMAS MORGAN v. THOMAS TAYLOR AND LOUISE
TAYLOR.

In 1871 the plaintiff recovered a judgment against the defendants, an
execution was issued and returned unsatisfied; in 1872 the plaintiff
died, the fact of his death was unknown to his attorney; in 1873 an
alias execution was issued, and property of defendants levied on; on
motion to quash the writ, *held*—

1. That prior to the passing of the amended practice act, (*Rev.*, 1874,
§ 204,) upon the death of a sole plaintiff after final judgment, an
execution could only properly issue in the name of the plaintiff's per-
sonal representatives, and no other method but the proceeding by *scire
facias* would serve to bring them into court.

2. The fact that the plaintiff's attorney, who caused the alias writ to
be issued, was, at the time of its issue, uninformed of the plaintiff's
death, will in no way affect the case.

3. There is no power in the court to so amend this writ as to give it
validity; the date of the writ actually does, and by law, should
express the true time of issuing the writ.

On motion to quash *alias fi. fa.*

Argued at November Term, 1876, before Justices KNAPP
and REED.

For the motion, *C. E. Hendrickson.*

Contra, *F. Voorhees.*

The opinion of the court was delivered by

KNAPP, J.   The plaintiff, on the 14th day of January,
A. D. 1871, recovered a judgment in this court against the
defendants.   A *fi. fa.* tested the same day issued thereon,
directed to the sheriff of Burlington county, who returned
the same to the February Term of the same year, wholly un-
satisfied.   On the 16th day of May, 1872, the plaintiff,
Thomas Morgan, died.   In the month of October following,
Thomas Taylor became the purchaser and took conveyance

of a house and lot in Mount Holly. After the plaintiff's death an alias execution was issued by the attorney of record of the plaintiff, tested the 9th day of April, 1873, and returnable to the June Term of this court; under this latter writ the sheriff levied on the house and lot above mentioned of the defendant. A motion is now made to quash the alias execution as void.

That the execution under which the levy was made is a void writ, seems not to admit of a question. It is, in no way, of importance as affecting the case, that the attorney who caused the writ to be issued, was, at the time of its issue, uninformed of the plaintiff's death.

The writ was granted to one who, in his lifetime, might rightfully have had execution of his judgment, but, at the time of its issue, was not in being.

By the common law, all proceedings in a suit at law are stopped by the death of one of the parties. If death happens before judgment, none can be rendered; if after judgment and before execution, no execution can issue. After judgment rendered in the suit, if there were a new person, to be either benefited or charged by the execution of a judgment, such new person could be made a party thereto, by *scire facias* only.

By various acts of Parliament in England, some extending the use of *scire facias* procedure, others providing for suggestion of death upon the record; in many cases of death of the parties, happening in different stages of the cause, and when the subject matter of the suit was a right that survived to or against the representatives, the abatement of suit was prevented, and the cause revived and allowed to proceed in the name of the representatives; but where a plaintiff died after final judgment, and before execution, the fruits of the judgment could be saved only by *scire facias,* to revive it in the name and for the benefit of the new person in interest—the representatives of the deceased plaintiff. *Tidd's Practice, title Scire Facias.*

And such was the law of this state, as applicable to the death of a sole plaintiff after final judgment, at the time of Morgan's death, and when the execution in question was issued. The execution could properly have issued only in the name of plaintiff's personal representatives, and no other method than proceeding by *scire facias* would serve to bring them into the writ. By the provisions of the two hundred and fourth section of the revised practice act, an easier and more expeditious mode is given for bringing in the representatives of a deceased plaintiff.

It was suggested on the argument that there was power in the court so to amend this writ as to give it validity. The ground upon which such authority can be exercised in this case is not apparent, nor do I think it to exist.

As between parties to a suit, an execution issued has relation to its test; and writs properly tested in the lifetime of the plaintiff, although actually issued after his death, have commonly been supported and executed ; and cases are found where executions issued and tested in vacation, after the death of a sole plaintiff, have been amended, by the court allowing the test to be changed to a day in the preceding term, which ante-dated plaintiff's death. These are cases where the writ might properly have been so ante-dated when actually issued. *Center* v. *Billinghurst*, 1 *Cow.* 33.

The execution in this case was dated of the day on which it actually was issued. The statute required that it should be so. *Nix. Dig.* 733, § 121. If it were admissible, in view of that act, to change by way of amendment, a date which actually does and by law should express the true time of issuing the writ, the court would scarcely be willing to carry the ante-dating back over four terms of the court next preceding its issue, and five preceding its return. This is what would be necessary to find the plaintiff alive.

The motion to quash the writ is granted, with costs.